## DAVIDSON v. GOODALL.

If a female of the age of eighteen years, having no father, and whose nearest relatives are unable to afford her a home, has resided several years with a cousin, serving in his family as occasion required, without a stipulated compensation for her service, or for her board, such cousin stands *in loco parentis*, and the facts are sufficient to prove the relation of master and servant, for the purpose of sustaining an action on his part, for seducing the servant.

It is no objection if she were absent on a visit when the act complained of was committed, or if she soon afterwards left the house of the plaintiff.

Evidence of a breach of promise of marriage is not admissible in this action ; but the plaintiff may show that the defendant addressed the servant with professions of honorable intentions.

He may show that premature labor and consequent prolonged sickness were produced by a rumor that caused the servant sudden grief and disappointment.

CASE, for the seduction of one Priscilla W. Hoitt, the plaintiff's servant.

At the time of the act complained of, the servant was of the age of eighteen years, whose father had died, and who had no guardian. She had one brother, married, and residing in Hopkinton, in Massachusetts, and another a minor, and poor.

For some time before the decease of her father, and ever since, she resided in the family of the plaintiff, except a part of the summer of 1844, when she worked elsewhere as a hired servant, receiving the wages, and disposing of them in the purchase of necessary clothing. At the expiration of that time she returned to the plaintiff's house, and was principally occupied in making preparations to go to Hopkinton. At the end of about a week she went to visit a relative, where she spent a few days, and thence went to the house of one Crouch, by invitation, to make a visit before going to Hopkinton. She

remained there about a week, occasionally rendering assistance to Mrs. Crouch, for which she neither received nor expected any compensation. From Crouch's she returned to the plaintiff's house, whence, in September, 1844, she went to Hopkinton, in Massachusetts. While upon this visit to Crouch's the act of seduction was accomplished by the defendant.

During all the time that she remained in the family of the plaintiff she labored as there was occasion, but never received or contracted for any wages, nor ever paid or agreed to pay him any thing for her board or clothing. The plaintiff is her cousin; her father died poor, and her mother, soon after his death, went to reside and still resides with the plaintiff.

While the young woman was at Hopkinton she worked at various places for wages, which she disposed of as she pleased; and in March, 1845, having discovered her condition of pregnancy, she returned to the house of the plaintiff.

Before arriving there, however, she was taken with premature labor at the house of one Smith, in Haverhill, where she remained a little more than two weeks, and where the plaintiff and his wife attended her, and when able to be removed conveyed her to their house.

The servant testified that she left Hopkinton and came as far as Haverhill, expecting that the defendant would marry her, and that on arriving at Smith's, in Haverhill, was informed that he had been married to another woman, and that on the evening of receiving this information, she was taken sick.

A physician testified that such a disappointment, if severely felt, would have a tendency to produce the premature delivery and the dangerous and protracted illness that ensued.

To this testimony of the servant and of the physician, the defendant objected, but it was admitted.

To prove that the defendant professed to visit the servant in an honorable way, a letter from him to the servant was offered by the plaintiff. To this the defendant objected, but the court admitted it.

The defendant also contended that the evidence did not show the relation of master and servant between the plaintiff and the party seduced that would enable him to maintain the action; but the court ruled that the evidence was sufficient to submit to the jury for that purpose.

The jury were also instructed that if they should find the defendant guilty, and that he resorted to fraud and deception to accomplish his purpose, they were not bound to limit the damages to the exact amount of the value of her services, but might assess such further sum as would compensate the plaintiff for his wounded and mortified feelings, occasioned by the act, and such as would tend to check the commission of such offences. To this instruction the defendant took exception.

The jury returned a verdict for the plaintiff, which the defendant, for the causes apparent in the case, moved to set aside, and for a new trial.

*Hibbard,* for the defendant. The relation of master and servant did not exist. The plaintiff had no right to the services of the girl at the time of the seduction. 2 Greenl. Ev., secs. 572, 573. Her services were voluntary. Her minority does not affect the case, nor does the fact that he was her cousin. He was not her father or her guardian. She was sometimes at the house of one relative and sometimes at that of another; was not at his house when the seduction occurred. Oliver's Prec. 491. The plaintiff was not liable for her expenses. The town of Haverhill paid those of her lying-in. The evidence of the breach of promise was inadmissible. 7 Wend. 193, *Gillet* v. *Mead;* 1 Johns. 297; 9 Johns. 387; 5 East 45.

*Morrison*, for the plaintiff. If an orphan be supported by her uncle, he is *in loco parentis*. The action may be brought by any relative. 3 Bl. Com. 136; 2 T. R. 4; 1 Wend. 447; 11 East 23. The plaintiff's house was the girl's only home. She worked there as her work was needed, and had no wages, and was like a daughter of the family. If the plaintiff is *in loco parentis* to her, he need show no acts of service on her part. 10 Wend. 338; 2 Wend. 459. Where acts of service must be proved, the slightest are sufficient, nor is any contract necessary. 2 T. R. 166.

The girl retained her home at the plaintiff's, though on a visit at Crouch's. 2 Stark. 493. Crouch could not maintain the action, nor could her mother. 2 N. H. Rep. 29; 2 Watts 474.

You may show that the defendant professed to have honorable intentions. That is all that the letter discloses. 2 Greenl. Ev. 472; 3 Stark. Ev. 1110. We showed aggravating circumstances attending the wrongful act, and nothing more. 10 N. H. Rep. 327. The defendant is answerable for all the natural consequences of his act. If he has been guilty of fraud, the jury may make him an example. 3 Wils. 18; 4 N. H. Rep. 501, *Sanborn* v. *Neilson;* Selwyn's N. P. 1018.

GILCHRIST, J. This is an action on the case for debauching the plaintiff's servant, by which tortious act he was deprived of her services.

The first question presented is, whether the relation of master and servant existed, as alleged in the writ, at the time when the wrongful act, resulting in the consequential damage to the plaintiff, is proved to have been committed; for, if so, the action may be maintained without reference to the fact that it was dissolved soon afterwards, and before the more appreciable tokens of the inability of the servant to render efficient service became

manifest, and before the physical suffering and infirmity occasioned by the act complained of ceased, or could have caused her to become a burden upon the hospitality of her master. The law, in such cases of tort, will presume a consequential damage to some extent, and the jury are permitted, upon the evidence, to find sufficient damages to make the remedy an effectual one, with reference to the real object at which the proceeding is aimed. It is of no consequence, therefore, if the young woman in this case left the plaintiff's service and protection soon after the act of the defendant which caused her subsequent suffering and sickness, if there was evidence to justify the jury in finding that she was in his service for the purpose of sustaining this action, when the act was committed. 2 Greenl. Ev. 572.

It is perfectly well settled by the authorities that the right which the plaintiff has, in cases like the present, to maintain his action, is founded upon the actual relation of master to the party most immediately injured, and that this relation must be proved; but it is also well settled that the relation need not be very strict, or one that exacts a very burdensome service. If the plaintiff was the parent, or stood in the place of a parent to the supposed servant, and she was accustomed actually to render services at his request, although no reward or term of apprenticeship had been arranged, and although she was of age and might have removed her situation at her own will, it is considered that enough is proved to establish the relation for the purposes of such an action as the present. Nor is it considered to be dissolved by a temporary absence, nor against the wishes of the master, while an intention remains of returning to his house. 3 Bl. Com. 142, note 14; 2 Greenl. Ev., secs. 572, 573.

In this case the plaintiff was the cousin of the young woman, Priscilla Hoitt, and she had lived in his house more than two years, and since the death of her father.

That house was treated and considered by her as her home. She lived there, it would seem, without reckoning for her board, and served as occasion required in the family. Although she had formed the purpose of going to the house of Chase, in Massachusetts, there is no evidence whatever of her having acquired a home at any other place than at the plaintiff's residence. She formed in fact a part of his family, owing and rendering the services incident to the relation of dependence which she clearly held towards its head. It is not easy to distinguish this case in principle from that class of cases in which it has been held that an adopted child, a niece, or a daughter, residing in the family of the plaintiff, and performing even slight acts of service, was his servant, so far as to be entitled to his protection, and to enable him to maintain an action of this nature. *Edmondson* v. *Mackell*, 22 T. R. 4; *Irwin* v. *Dearman*, 11 E. 23.

The fact that she was on a visit at Crouch's, when the injurious act was done, does not impair the plaintiff's relation as the head of a family, of which, notwithstanding the temporary absence, she continued to form a part. *Carr* v. *Clarke*, 2 Chit. R. 260.

We think, therefore, that the evidence on this point was such as justified the jury in finding the verdict, so far as it depended upon proof of the relation of master and servant, necessary to sustain this action.

The next question relates to the evidence that was admitted to enhance the damages. It was proved that the defendant had addressed the servant in the way of marriage, and had induced her to believe that he would enter into that connection with her; that when she discovered her condition, while she was in Hopkinton, she came home, with the expectation that he would perform his engagement in season to protect her from further disgrace; that when she arrived at Smith's inn, in Haverhill, she first learned that in her absence the defendant

had been married to another, and that her disappointment occasioned a premature birth, and the serious consequences to her health that sometimes attend such events.

In *Tullidge* v. *Wade*, 3 Wils. 18, it was said by one of the justices that giving the promise of marriage in evidence was improper in an action of trespass for an injury like the present, and the reason seemed to be, that for the breach of such a promise an action might be maintained by the woman herself. But the case sustains the idea, that, upon the article of damages, the jury might consider the insult done to the plaintiff, whose hospitality had been abused by the defendant, and whose confidence, in the honorable pretences with which he had addressed the daughter, had been betrayed. The same is the doctrine of *Dodd* v. *Norris*, 3 Camp. N. P. 519, in which Lord *Ellenborough* held that so much might be shown, but that the plaintiff could not be permitted to recover damages for the defendant's breach of promise to her daughter.

Professor Greenleaf adopts the general proposition that in these cases the plaintiff may show the terms on which the defendant visited his house, and that he was paying his addresses upon the promise or with the intention of marriage. 2 Greenl. Ev., sec. 579.

We may, therefore, conclude that the letter containing the evidence of the professions with which the defendant was addressing the young woman as early as May, 1844, was properly admitted.

The testimony of the physician, that the sudden and intense agitation of the mind of the patient, by disappointment, might have occasioned the premature labor which took place, and the protracted sickness, had a tendency, perhaps, to show that the violation of the defendant's promise went to aggravate the evils which resulted from the act directly complained of; but that was matter of argument from facts, clearly admissible on other grounds.

She herself testified that she came to Haverhill with

expectations that were disappointed by the intelligence (whether true or false) which she there received. This does not necessarily implicate the defendant beyond the effects of the seduction proved, for the case does not show that he broke his promise of marriage, or gave just ground for the grief which brought on the consequences which have been adverted to.

The plaintiff's case was, that the defendant debauched his servant, and that her services were thereby lost. To support his case he may prove all the facts that resulted from the act — the pregnancy and its actual consequences. In this case, the grief and disappointment of the servant whether occasioned by the defendant or not, is immaterial, and did not appear), modified the train of those consequences, and, instead of one form of misery and disaster, another followed, whether greater or less as it respected the plaintiff, the jury were the judges.

The effect of the evidence was to show, not that the defendant had occasioned the premature labor and its consequences, by afflicting the girl with grief and disappointment for his broken vow, but simply to show that, as one of the actual incidents of pregnancy, her system was so exposed that a rumor of an event was sufficient to produce the disastrous effects that were described, and did produce them.

We are unable to see any sufficient objection to the evidence admitted, or to the directions given by the court to the jury in relation to it. It is hardly necessary to say that exemplary damages may be given in this action, since such damages are the end for which it is ordinarily brought. The actual loss sustained by the plaintiff, through the diminished ability of his daughter, relative or ward, to yield him personal service, as well as the servile position of the supposed servant herself in the family of her protector, is ordinarily scarcely more than a mere fiction. It is one of those cases in which an action devised for one

purpose has been found to serve a different one by the aid of the discretion which courts have assumed in instructing the jury, and the readiness of the jury to render substantial justice by their verdict, where the forms of law imposed by the instructions of the court admit of its doing so.

*Judgment on the verdict.*